UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| VICTORIA M. WILLS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 08-11086-JLT |
| | * | |
| ONE OFF, INC., ANTHONY IZZO, and | * | |
| JEFF HILL, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM

April 8, 2010

TAURO, J.

I.  Introduction

These claims arise out of Plaintiff Victoria Wills' negligence action against One Off, Inc. ("One Off"), Anthony Izzo ("Izzo"), and Jeff Hill ("Hill"). Defendant/Cross-Claimant One Off seeks a declaration that, under the terms of an agreement between the parties, Defendant/Cross-Defendant Izzo is responsible for indemnifying One Off against any liability to Plaintiff arising from the acts or omissions of the M/V MARGAUX's crew or Izzo's guests.

Presently at issue are Parties' cross-motions for summary judgment. For the reasons set forth below, Defendant/Cross-Defendant Izzo's Cross-Motion for Summary Judgment [#52] is DENIED and Defendant/Cross-Claimant One Off's Motion for Summary Judgment [#34] is ALLOWED.

II.  Background[1]

---

[1] This court presents these facts in the light most favorable to Izzo, the party not prevailing on summary judgment. See Alliance of Auto. Mfrs. v. Gwadosky, 430 F.3d 30, 34 (1st Cir.

A.   The Underlying Lawsuit

The M/V MARGAUX is a motored yacht that is sometimes made available by its owner, Defendant One Off, for charter.[2] On June 27, 2007, Izzo and One Off entered into a contract, titled the Yacht Charter Party Agreement (the "Charter Agreement"), whereby Izzo agreed to charter the M/V MARGAUX from July 3-8, 2007.[3] Izzo then entered into a contract, titled the Yacht Services Agreement (the "Services Agreement"), with the M/V MARGAUX's captain, Jeff Hill, to engage Hill and the M/V MARGAUX's three other crew members for the duration of the trip.[4]

On or about July 7, 2007, the M/V MARGAUX was docked in Nantucket Harbor.[5] While attempting to board the M/V MARGAUX, Plaintiff, who was one of Izzo's guests, fell from a gangplank, or passarelle, into the harbor.[6] The passarelle then fell from its position, striking Plaintiff while she was in the water.[7] Captain Hill and the first mate were usually responsible for setting up the passarelle that passengers used to disembark.[8]

---

2005).

[2] Yacht Charter Party Agreement, attached as Ex. 1 to Green Aff. Supp. Izzo's Cross Mot. Summ. J.

[3] Id.

[4] Yacht Services Agreement, attached as Ex. 2 to Green Aff. Supp. Izzo's Cross Mot. Summ. J.

[5] Izzo Depo., attached as Ex. B to Izzo's Mem. Supp. Cross Mot. Summ. J.

[6] Second Amended Compl., attached as Ex. 3 to Green Aff. Supp. Izzo's Cross Mot. Summ. J.

[7] Id.

[8] Simkowitz Depo., attached as Ex. C to Izzo's Mem. Supp. Cross Mot. Summ. J.

On September 15, 2008, Plaintiff filed a negligence action in this court against One Off. Plaintiff amended her complaint against One Off on December 15, 2008 to include Izzo and Hill as Defendants. Plaintiff claimed that her injuries were caused by either the negligence of the crew or a dangerous condition aboard the vessel, for which some or all of the Defendants shared responsibility. She asserts that, as a result of this negligence, she suffered bodily harm, mental anguish, expenses for medical care, a diminution of her earning capacity, and was otherwise injured.

One Off then filed a cross-claim against Izzo for indemnity and declaratory relief, claiming that Izzo must indemnify One Off against any liability to third parties for harm attributable to Izzo's acts or omissions, including liability alleged in the original action, pursuant to the terms of the Charter Agreement. One Off also filed this <u>Motion for Summary Judgment</u>, seeking summary judgment on its cross-claim against Izzo.

Izzo then filed a <u>Cross-Motion for Summary Judgment</u>, seeking a declaration that the terms of the Charter Agreement do not require him to indemnify One Off against any liability to Plaintiff.

    B.    <u>The Relevant Contracts</u>

        1)    The Charter Agreement

The Charter Agreement, executed on June 27, 2007, sets out the terms of Izzo's charter of the M/V MARGAUX from One Off. Paragraph 1 of the Charter Agreement established that the charter was to last five days, starting and ending at Newport, Rhode Island, for the purpose of

"[c]ruising the New England area."[9]

Paragraph 8 of the Charter Agreement contains an indemnification provision, titled "Redelivery and Indemnification," which states in part:

> Charterer shall indemnify and hold harmless Owner against and from any and all liability to third parties for loss or damage attributable to Charterer's acts or omissions.[10]

Paragraph 11 of the Charter Agreement, titled "Control," provides in pertinent part:

> The Yacht is chartered on a demise basis. Accordingly, during the charter term, Charterer shall have full authority regarding the operation and management of the Yacht and is solely responsible for retaining a master and crew. Charterer, however, shall not allow anyone to operate the Yacht unless properly trained and experienced in coastwise piloting and deep sea navigation of vessels similar in type and size to the Yacht.[11]

    2)    The Services Agreement

Izzo and Defendant Hill, the captain of the M/V MARGAUX, executed the Services Agreement on June 27, 2007.[12] The Services Agreement governed the services Captain Hill was to provide to Izzo during the charter, including the provision of a crew.[13]

The second "Whereas" clause of the Services Agreement states:

> [T]he charter is under a demise contract, pursuant to which Charterer is to provide a master and crew and necessary supplies.[14]

---

[9] Yacht Charter Party Agreement, attached as Ex. 1 to Green Aff. Supp. Izzo's Cross Mot. Summ. J.

[10] Id.

[11] Id.

[12] Yacht Services Agreement, attached as Ex. 2 to Green Aff. Supp. Izzo's Cross Mot. Summ. J.

[13] Id.

[14] Id.

4

The Services Agreement also sets out the nature of Captain Hill's relationship with Izzo. The third "Whereas" clause states:

> Charterer desires to retain Captain Jeff Hill to man and provision the Vessel, and Captain Jeff Hill is willing to provide such services, subject to the terms and conditions contained herein.[15]

On the same subject, Paragraph 5 provides that:

> The master shall act at the Charterer's direction; provided however, that the master shall not have to carry out any order that jeopardizes the safety of the Vessel or those on board.[16]

III.  Discussion

    A.  Summary Judgment

Under Fed. R. Civ. P. 56(a), summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[17] For summary judgment purposes, courts "read the record in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor."[18] When both parties move for summary judgment, "the court must consider each motion separately, drawing inferences against each movant in turn."[19]

Where there is no ambiguity in the contract, summary judgment is "an appropriate vehicle

---

[15] Id.

[16] Id.

[17] Thompson v. Coca-Cola, 522 F.3d 168, 175 (1st Cir. 2008).

[18] Merchants Ins. Co. v. United States Fid. & Guar. Co., 143 F.3d 5, 7 (1st Cir. 1998).

[19] Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997).

for resolving contract-interpretation disputes."[20] The parties to this action do not dispute the terms of the Charter Agreement or the Services Agreement. This court, therefore, may dispose of the issue as a matter of law.

### B. The Charter Agreement is a Demise Charter

Charters are agreements outlining the terms and conditions governing one person's use of a vessel owned by another.[21] The two main types of charters are "demise charters" and "affreightment charters."[22] A demise charterer is liable "*in personam* for all liabilities arising out of the operation of the vessel."[23] He bears responsibility for the actions of the master and crew and must "indemnify the owner against liability suffered by the vessel as a consequence of the charterer's negligence."[24] Under a demise charter, "'without any sale or purchase of the ship' the charterer becomes its owner for the term of the charter 'with the character or legal responsibility of ownership.'"[25] In contrast, under an affreightment charter, the vessel's owner retains management and control.[26]

One Off argues that it is entitled to summary judgment because the Charter Agreement constitutes a demise charter and, therefore, Izzo agreed to indemnify One Off against any liability

---

[20] In re Newport Plaza Assocs., 985 F.2d 640, 644 (1st Cir. 1993).

[21] Walker v. Braus, 995 F.2d 77, 80 (5th Cir. 1993).

[22] Keller v. United States, 557 F. Supp. 1218, 1226 (D.N.H. 1983).

[23] Thomas J. Schoenbaum, 2 Admiralty and Maritime Law, § 11-18 (4th ed. 2004).

[24] Id.

[25] Vitozi v. Balboa Shipping Co., 163 F.2d 286, 289 (1st Cir. 1947) (quoting Reed v. United States, 78 U.S. 591, 600-01 (1870)).

[26] Keller, 557 F. Supp. at 1226.

to Plaintiff arising out of the actions of Izzo's guests or the M/V MARGAUX's crew.  To support its claim that the Charter Agreement is a demise charter, One Off points out that Paragraph 11 of the Charter Agreement states that "[t]he Yacht is chartered on a demise basis," thereby expressly establishing a demise charter.  One Off also cites the fact that the Charter Agreement contains an express indemnification provision, which holds that "Charterer shall indemnify and hold harmless Owner against and from any and all liability to third parties for loss or damage attributable to Charterer's acts or omissions."[27]  In addition, One Off argues that the terms of the Services Agreement further demonstrate Izzo's responsibility over the vessel's management, as that agreement identifies the Charter Agreement as a 'demise' charter, establishes Izzo's obligation to provide a crew, and requires that Captain Hill generally follow Izzo's orders.

There is a paucity of First Circuit caselaw addressing contracts that expressly establish demise charters.  The First Circuit has, however, interpreted written contracts that did not expressly establish demise charters.  In <u>Stephenson v. Star-Kist Caribe, Inc.</u>, the First Circuit analyzed both the terms of the agreements and the parties' subsequent actions to determine whether the owner "completely and exclusively relinquishe[d] 'possession, command, and navigation.'"[28]  The <u>Stephenson</u> court found that charterer Star-Kist's involvement in the vessel's operation was insufficient to constitute a demise charter and that, therefore, Star-Kist was not

---

[27]Yacht Charter Party Agreement, attached as Ex. 1 to Green Aff. Supp. Izzo's Cross Mot. Summ. J.

[28]<u>Stephenson</u>, 598 F.2d 676, 679 (1st Cir. 1979) (quoting <u>Guzman v. Pichirilo</u>, 369 U.S. 698, 699 (1962)) (finding no demise charter where "the arrangement . . . as manifested by the documents and the course of dealing does not amount to a demise charter. . . .").

liable for injuries suffered by a crew member during the charter.[29]

This court has determined that in this case, unlike in Stephenson, the terms of the Charter Agreement and the parties' conduct clearly establish the existence of a demise charter between Izzo and One Off. As One Off argues, Paragraph 11 of the Charter Agreement expressly identifies the arrangement as a 'demise' charter; that is to say, a contract that endows the charterer with the characteristics and responsibilities of ownership.[30] Further, the Charter Agreement's provisions indicate that the purpose of the contract was to transfer temporary ownership to Izzo, encompassing "possession, command, and navigation" of the vessel and liability to third parties. The Agreement states that "during the charter term, Charterer shall have full authority regarding the operation and management of the Yacht . . . ." It also provides that "Charterer shall indemnify and hold harmless Owner against and from any and all liability to third parties for loss or damage attributable to Charterer's acts or omissions."[31] Indeed, including these provisions in a contract already designating itself as a demise charter seems to be an excess of caution, as both provisions are core feature of demise charters.[32]

---

[29]Id. at 679.

[30]See Vitozi, 163 F.2d at 289.

[31]Yacht Charter Party Agreement, attached as Ex. 1 to Green Aff. Supp. Izzo's Cross Mot. Summ. J., at ¶¶ 11, 8.

[32]See Brophy v. Lavigne, 801 F.2d 521, 523 (1st Cir. 1986) ("To create a demise or bareboat charter, the owner of the vessel must completely and exclusively relinquish 'possession, command, and navigation' thereof to the demisee.") (quoting Guzman, 369 U.S. at 699); Schoenbaum, supra, at § 11-18 (demise charterer is "liable *in personam* for all liabilities arising out of the operation of the vessel . . . ." and if the ship remains liable *in rem*, the charterer must indemnify the owner "against liability suffered by the vessel as a consequence of the charterer's negligence.").

Izzo also relies on Stephenson in arguing that the Charter Agreement is not a demise charter. There, the First Circuit found no demise charter where, among other evidence, the owner hired the crew and the charterer paid the crew amounts fixed by the vessel's majority owner that it then subtracted from sums owed the owner under a separate contract.[33] Here, Izzo alleges that One Off selected the captain and crew. Further, Izzo contends that because he paid a lump sum to One Off's agent who then distributed the money to the crew, it might appear that, as in Stephenson, Izzo "did not accept ultimate financial responsibility for the crew's wage."[34]

Stephenson does not foreclose a finding that the contract between Izzo and One Off is a demise charter. The Stephenson court considered various factors to determine whether, in the absence of an express contract, the arrangement between the partes amounted to a demise charter rendering the charterer liable for a seaman's injuries.[35] Here, the express indemnification and demise provisions of the Charter Agreement render a similar investigation unnecessary. Furthermore, should this court conduct such an investigation, significant differences remain. The Stephenson court viewed the presence of the owner's crew onboard as evidence that the owner retained "authority over the manning of [the] vessel," which the court took to be "an important determinant whether it is the owner or charterer who exercises management and control."[36] Here,

---

[33] See Stephenson, 598 F.2d at 680.

[34] Id. at 681.

[35] See id. at 678 ("The arrangement between Star-Kist and Scarab is set forth in two documents, an agreement for the sale and purchase of fish and a loan agreement."), 679 ("The arrangement . . . does not amount to a demise charter and hence Star-Kist is not liable as owner pro hac vice for plaintiff's injuries.").

[36] Id. at 680.

unlike in Stephenson, Izzo clearly retained authority over manning the M/V MARGAUX. The Charter Agreement explicitly assigned authority over operation of the yacht to Izzo and the Services Agreement states that Izzo retained Hill as captain, requiring Hill to follow Izzo's orders. In addition, in finding that ultimate control rested with the owner, the Stephenson court stressed that, while the charterer provided some crew members, the owner had the ability to fire them.[37] Here, while One Off may have provided a captain and crew, under the terms of the Charter Agreement, Izzo "was solely responsible for retaining" them.[38]

Despite Izzo's arguments to the contrary, nothing in the parties' actions suggests anything other than compliance with the full transfer of control intended by the Charter Agreement. Izzo cites to Rodriguez v. McAllister Bros., where the First Circuit stated that "'the presence of an owner's crew onboard' is 'very strong presumptive evidence'" that the charter is not a demise charter, "'which only very cogent circumstances will overthrow.'"[39] Izzo contends that under Rodriguez, One Off retained control of the vessel, inconsistent with a demise charter, by selecting the captain and crew onboard during the charter, and paying the crew's salary. Rodriguez, however, is inapposite because no written contract existed in that case, and the First Circuit looked to the owner's selection of the crew to discern the parties' likely expectations as to the nature of their agreement.[40]

---

[37]See id.

[38]Yacht Charter Party Agreement, attached as Ex. 1 to Green Aff. Supp. Izzo's Cross Mot. Summ. J, at ¶ 11.

[39]Rodriguez, 736 F.2d 813, 816 (1st Cir. 1984) (quoting Stephenson, 598 F.2d at 680).

[40]See id. at 815 ("In the absence of a writing, a demise charter requires showing essentially a change in ownership, a complete relinquishment of 'possession, command and navigation . . . .'"); 816 ("It is particularly unlikely that on each occasion the parties contemplated that Port [the

10

In this case, there is a written contract setting out the parties' agreement as to responsibility over the crew and the nature of the charter. A contract expressly establishing One Off's transfer of control to Izzo and Izzo's responsibility for retaining a crew surely constitutes the "cogent circumstances" rebutting the no-demise presumption created under <u>Rodriguez</u> by the presence of the owner's crew onboard during the charter. Moreover, the Supreme Court has noted that "the fact that the captain is employed by the owner is not fatal to the creation of a demise charter party, for a vessel can be demised complete with captain if he is subject to the orders of the demisee during the period of the demise," which was the case here.[41]

Izzo devotes much of his argument in support of his cross-motion for summary judgment to various Charter Agreement provisions restricting his use of the M/V MARGAUX, claiming this shows that he retained less than full control of the vessel.[42] These clauses do not weigh against a

---

charterer] completely took over the vessel, and assumed an ownership type responsibility for employees that it had not selected, and for the unseaworthiness of a vessel with which it had such an ephemeral connection.").

[41]<u>Guzman</u>, 369 U.S. at 701; <u>see also</u> Schoenbaum, <u>supra</u>, at § 9-18.

[42]To bolster his claim, Izzo highlights the following restrictions in the Charter Agreement:

*9.   <u>Restricted Use</u>. Charterer agrees that the Yacht shall be employed exclusively as a pleasure vessel for the sole and proper use of Charterer, and Charterer's guests and servants, during the term of this charter and shall not transport merchandise or carry passengers for pay, or engage in any trade . . . .*

*13.   <u>Guest Limitations</u>*

. . .

*2.   Smoking permitted in designated areas only.*

. . .

*4.   Maximum number of 6 guests sleeping and eating onboard regularly and 12 guests while cruising at any time.*

. . .

11

finding of a demise charter, because such provisions are typical in these agreements.[43]  Further, as One Off notes, provisions restricting Izzo's use of the vessel to use as a pleasure vessel, and prohibiting him from engaging in trade, merely reflect the M/V MARGAUX's licensure as a pleasure yacht.

Izzo contends that neither the Charter Agreement nor any common law duty imposes liability on Izzo for torts committed by a third party if Plaintiff's accident was caused by another of Izzo's guests moving the passerelle as Plaintiff boarded.  Whether Plaintiff's accident was caused by the M/V MARGAUX's crew or one of its guests does not preclude summary judgment here, however, because under a demise charter, a charterer assumes the liabilities of the owner.[44]  Any liability attaching to One Off stemming from the charter period is, therefore, borne by Izzo.

In the same vein, Izzo also argues that summary judgment is inappropriate given that Plaintiff's injuries may have been caused by a pre-existing defect onboard the vessel.  This ruling, however, only endorses indemnification where Plaintiff's injuries are attributable to Izzo's acts or

---

> 6. *Rendezvous Diving only.*
>
> 7. *The crew aboard is there to maximize your enjoyment and in order to do so cannot be expected at any time to be responsible for children.  Children under the age of 13 are not permitted onboard without the direct supervision of a nanny or adult charter guest at all times.*

[43]See Schoenbaum, supra, at § 11-3 ("Other provisions of a demise charter party typically deal with such matters as delivery of the vessel and the inception of the charter, redelivery at the term, subchartering, restrictions on use, salvage, and default, and notice.").

[44]McAleer, 57 F.3d at 112 ("In effect, for liability purposes, an owner *pro hac vice* is treated as a shipowner."); see Schoenbaum, supra, at § 11-3 ("The charterer, as owner *pro hac vice* is also potentially liable for . . . personal injuries to . . . third parties . . . .").

omissions. A demise charterer is not generally liable for defective conditions that existed before the charterer took control of the vessel.[45] The Charter Agreement itself requires One Off to deliver the M/V MARGAUX "in full commission and proper working order . . . staunch, clean and in good condition throughout and ready for service."[46] One Off therefore could not recover if such a defect existed prior to delivery of the vessel to Izzo.

IV.     Conclusion

For the foregoing reasons, Defendant Izzo is obligated to indemnify One Off for any liability to Plaintiff arising out of the acts or omissions of the M/V MARGAUX's crew or guests. Defendant/Cross-Defendant Izzo's Cross Motion for Summary Judgment [#52] is therefore DENIED, and Defendant/Cross-Claimant One Off's Motion for Summary Judgment [#34] is ALLOWED.

AN ORDER HAS ISSUED.

   /s/ Joseph L. Tauro

United States District Judge

---

[45] Id. at 112; Ramos v. Beauregard, 423 F.2d 916, 917 (1st Cir. 1970) ("It is of course true . . . that a shipowner's duty to provide a seaworthy vessel [to a demise charterer] cannot be delegated or avoided by contract.").

[46] Yacht Charter Party Agreement, ¶ 2.